Richardson J.,
dissenting. We have jnst decided (Milledge *368 and Broadwaters,) that where the jury has drawn from the facts a plainly erroneous verdict, a new trial will be ordered. And we have to decide in this case, whether the same shall not be done, when the verdict for the plaintiff rests upon equivocal evidence, and this infracts a plain, practical and essential inference from the fundamental part of the plaintiff’s case. I mean the receipt for $2475. For the Law of Presumptions, see Stephen’s N. P., 1554, and Greenleaf, 18. The first inquiry is, therefore, what is the inference to be drawn from this receipt? It is in these words, to wit:
Jacob B. Smith, Executor, v. Jabez G. Brown.
1 Rec’d, 19th April, 1841, from G. > O. Riley, Sheriff, the sum of two ) thousand dollars, and also four hundred and seventy-five dollars—being $2475 in part of this case.” [Signed] E. Bellinger, Plaintiff’s Attorney.
Does this receipt imply that the $2475 were of the money of the defendant, Brown, or of Riley’s money? The legal, practical, and proper inference, pervades the whole case, and gives the principle of all just reasoning. No one can question, that in collecting money on an execution, and paying it over, the sherifl is an officer acting as the agent of both defendant and plaintiff. These are plain facts. It follows, that such collecting and paying do, and must infer, that the sheriff has collected the money of the defendant under the execution, and has not advanced the sheriff’s own money, because the former was his official undertaking, and to pay out of his own pocket was not his part. This inference is as clear as the analogous inference, that when Riley delivered the money to the plaintiff, he did not make the plaintiff his debtor, but paid him his own collected money; because, in both paying and collecting, the sheriff is equally an agent—not principal. This is the primary and undoubted position, and legal principle of the case before us; supposing it to turn upon the receipt alone. The sheriff, in this respect, is like other agents, attorneys or clerks, who act for their principals. But, in favor of no such agent can it be inferred, that he gratuitously advances his own money, and renders his principal his debtor. Why? simply because he acts only for his principal. In paying money, the sheriff has always this favorable presumption, that he has done his duty, but not *369 more than his duty. Nor can he, by his gratuitous acts, force either party to become his debtor—and as little the defend ant as the plaintiff, of course. The claim of one man to render another, by his own acts, his debtor, was repudiated by this Court in the recent case of Mathews v. Colburn. This is adjudged law, and will have some bearing on [his case hereafter; for the present I return to the general presumption.
It follows irresistibly, that when the sheriff paid i he plaintiff, the presumption, prima facie, is, that he paid with defendant's money, and not with his own. The judicial presumption being settled, this principle of law governs. Statute presurnplio donee probitur in contrarium. Until, therefore, such contrary be proved, the legal presumption is, that Riley paid the plaintiff with defendant’s money. Upon the receipt alone, there can be no other legal construction, and the action would fail. Now, then, secondly, has the contrary been shown in this easel We turn to the facts proved, always bearing in mind that they are offered to displace a presumption of law. Next, to the receipt of 19th April, ’41, already considered, comes the fact, that the sheriff’s books have been searched, and are found blank upon the subject. This negative fact increases the presumption, because it shows that Riley did not hold the defendant to be his debtor; the money had been received and paid away; and the thing ended accordingly. Riley has not debited Brown at all. This negative becomes stronger still, when we find there is the same blank as to the $1280, acknowledged to have been actually paid Riley by the defendant, but delivered to the plaintiff bv Riley. Again, then, as before the thing ended, and there is equally no entry. There is an obvious consistency in this construction, which places both those payments in equal law, no entry at all being found in the sheriff’s books. The third fact is, that the sheriff was ruled, <fcc., but never sold defendant’s property, nor, to appearance, urged him to pay; but, soon after, the $2475 was paid to plaintiff by the sheriff, in primo. How is the first general presumption, that it was paid with defendants money, rebutted by either the rule of Court, or the actual payment of the money by Riley? Riley still stood as all other sheriffs in like cases, and as he himself *370 stands, as to the payment of the $1280; they ave both of Brown’s money, prima facie. The fourth fact is, that Brown and Riley were very intimate; and Brown professed he would take no advantage of Riley’s death, &c. Assuredly, nothing can be made of these facts but by suspicious or unjust imaginations of dishonesty in Brown, which would be a strange and most unjudicial way of deciding a civil action; (see the case of Smets v. Plunket.) Fifthly, comes the statement of Mr. Aldrich, which sets forth three payments, each in the same terms, i. e., ‘‘then paid,” $2149; “then paid,” $2475; “then paid,” $1000. And two of these have turned out t o be payments made with the defendant’s own money, besides the one of $1280 since made by Brown, and through Riley to the plaintiff. But the second of these payments, to wit, that of $2475, has been ascribed to Riley, and been given by the verdict; no doubt in virtue of the receipt, and under the five facts which I have before narrated, and shown to be of no force to rebut the legal presumption, that no agent can assume, that he has paid, out of his own pocket, the debt of his principal, but must prove the fact before he can recover against such principal. But, I ask, if the converse of this rule has not been acted upon in this case, and Brown mulcted in the $2475, because he did not prove that sum to be of his money; whereas, it was Brown’s money, till proved to be Riley’s.
Reflect for a moment upon the facts that have led the jury to infract the legal presumption from the facts. 1. The sheriff’s books presented nothing. 2. The sheriff was ruled, and then paid the $2475. 3. He and Brown were great friends. 4. Aldrich made a statement of Brown’s debt. And 5. Brown said he would take no advantage of Riley’s death: ergo says the verdict, he did take advantage. Do such circumstances justify a verdict, which, upon the receipt alone, would have been a breach of the plainest law? Is it not then plain that the verdict has been given for Riley, because Brown did not prove that Riley was not the owner of his, Brown’s, money? For such reasons, and feeling a decided conviction that the verdict has infracted, settled and every-day principles of the laws of principal and agent, and will form a dangerous *371 precedent if ever upheld by a full majority of this Court, so as to constitute a law for all such cases, I would refer the case again to a jury. Take the common case of a travelling agent to collect accounts, and pay away the money—shall such an agent maintain actions against his principal, upon the receipts he takes, for money paid to the creditors of his principal, by simply assuming that he paid the debts gratuitously with his own money, and leaving it for the principal to disprove that assumption if he can? And is not such the whole ground of this action in favor of the late sheriff, Riley, against Brown? If my first legal presumption, that Brown must be considered the owner, prima facie, be correct, it is so: for Brown having failed to prove that Riley was not the owner of his, Brown’s, money, Riley gets it by the verdict. There is no proof whatever that it was Riley’s money; but the legal presumption being in favor of Brown, has not the principle been practically perverted and si rained to the use of Riley, his agent. And, in exchange for that, Brown receives the burthen of disproving ’twas Riley’s money, instead of Riley disproving ’twas Brown’s money. And this is done in favor of whom? It is done in favor of a sheriff, who, of all other agents, is most emphatically bound to collect money from the defendant in the execution, and from no other; and he must, therefore, be more than usually presumed to have received the money of him; and which official agent is prohibited from buying up, and of course enjoined against gratuitously tampering or meddling with judgments. It is, in fact, a great and wise principle, that forbids all agents from speculating in the rights of their principles; and sheriffs are not unsuspected. I do not mean to say that a sheriff may noi lend money to a defendant under execution, or pay the money gratuitously out of his own funds, as supposed in this case. But I do say, that if he does so gratuitously pay, he cannot recover, unless he makes the fact plain. And that, not only all the presumptions of law are against the assumption of such payment by a sheriff, but also according to the case of Mathews v. Colburn, the assent of the defendant ought first to be shown, either expressed or implied. Where is there any proof of assent stronger than that which was not upheld by this *372 Court in Mathews v. Colburn, and a new trial granted to the detendant, for whom Mathews alleged he had paid the money, and he had paid it. But had Colburn assented? was the question. Upon this head of assent, I would again say, it especially applies, in cases of this influential, popular and confidential, but often enough managing officer, the sheriff of the district, when he charges, that he paid a judgment out of his own pocket. Of course my reasoning is general, and the object is, to prevent imposition or injustice, by caution on this head. Men pressed by executions, make many confidential arrangements, counter-indemnities, and so on, with sheriffs. But the sheriff should not be allowed to carry off the verdict, upon little else than the customary receipt, that he paid the money to the plaintiff. His case should first be made plain: and where is the evidence? Upon the whole case, therefore, my opinion is, that there ought to be a new trial, on the second ground of appeal, i. e., upon the clear legal presumption that the $2475 were of Brown’s money, and not of Riley’s. This virtually includes also the second ground, that the evidence does not sufficiently support the verdict: and I file my dissent for the reasons before noticed, i. e., to limit, if possible, agents cases springing out of their own acts; and the receipts taken by themselves in disbursing the moneys of their principals. I would have a judicial estoppel to this dangerous practice.
Wardlaw J. concurred in the opinion, that there should be a new trial.